LAND, J.
The widow and the sole heir of the late Branch K. Miller, Esq., attorney at law, instituted the present suit, on January 24, 1911, on allegations of fact, in substance, as follows:
About February 19, 1904, the defendant offered verbally to procure a lessee for the Houssiere-Latreille Oil Company for the exploitation of certain oil lands near the town of Jennings, for a commission of 5 per cent, upon the amount of oil that might be realized by said lessors; payment to be-made from time to time as the oil was obtained.
D. Caffery, Jr., agent of said company, accepted said offer on the condition that said Branch K. Miller should be interested in and receive a part of said commission should a lessee be obtained by the defendant.
Defendant accepted said condition, and wrote to D. Caffery, Jr., recapitulating the agreement that he had provided for the said Branch K. Miller.
Defendant on April 4, 1904, wrote to said Miller, and stated, inter alia:
“I have made you a promise that I would give you one per cent, out of my five per cent.” —meaning one-fifth of his said 5 per cent, commission.
Branch K. Miller claimed up to the time of his death that his share should be equal to that of Crusel; but no more than one-fifth part was admitted by said Crusel as due; and petitioners accepted said stipulation in behalf of the deceased.
Defendant obtained the Texas Oil Company, as lessee, to exploit the lands of the lessors for oil; and oil was discovered and brought to the surface in large quantities.
The lessors received under their lease to the Texas Company, up to February, 1908, a large quantity of oil of great value, and the defendant was paid commissions thereon to the amount of $20,548.08, and other sums were paid him thereafter, and were still being paid him at the date this suit was filed.
Branch K. Miller died on September 24, 1906, and his succession was opened, and the plaintiffs respectively were duly recognized as widow in community and heir at law of the said decedent.
Plaintiffs prayed for judgment against the defendant for one-fifth of said sum of $20,-548.08, with 5 per cent, interest thereon from the date of its receipt by the defendant, less the one-fifth part of his disbursement for counsel fees, and other expenses; and for further judgment ordering defendant to render a full and fair accounting of all moneys *652 received and still being received under said contract, and that defendant be ordered to pay the one-fifth part thereof to petitioners with 5 per cent, interest thereon from dates of receipt, and for general relief.
Defendant, after pleading the general issue, admitted that he had promised Branch K. Miller one-fifth of the said commission; but averred that thereafter the Houssiere-Latreille Oil Company repudiated absolutely that it had any contract with the defendant, or that it was bound by any agreement made by Don Caffery, Jr.; and that thereupon the said Miller notified the defendant that he declined to give up his claim against the Houssiere-Latreille Company, or the claim for any part of the commission, and join defendant .in making claims on the said company, but stated that he would look to the Houssiere-Latreille Company and to the Cafferys to settle his claim; and that thereafter up to the date of his death the said Miller made no claim whatever to any part of defendant’s commission, and took no part whatsoever in the negotiations by which the defendant attempted to settle his claim; that, after the death of said Miller, the defendant sued the Houssiere-Latreille Company on said contract, and the estate of Miller took no part in or gave any assistance in said suit, and the said company did not defend on the ground that the said Miller had any interest in said contract, or that the defendant had agreed to relieve said company of said Miller’s claim; and that judgment was rendered in favor of the defendant for the whole of the commissions.
The defendant further averred that, since the rendition of said judgment, the estate of Miller has made its claim against said oil company for whatever was due said Miller, and said claim was paid or compromised by the company aforesaid.
Plaintiffs filed an amended petition alleging that additional commissions had been received by the defendant under the contract aforesaid and praying for judgment for one-fifth of the same.
Defendant filed an amended and supplemental answer, which starts out with an averment of error in the original answer on the part of his former counsel, from a misunderstanding of the facts of the case, or erroneous deductions therefrom. Respondent then presented his defense, in substance, as follows:
That the original agreement with Caffery, representing the oil company, was that the defendant was to receive a commission of 5 per cent, on all the oil that might be produced under the lease to be procured by the defendant.
That after this agreement had been made, Caffery asked the defendant, if the venture proved a profitable one, to agree with Miller to take care of him and give him a small part of his 5 per cent, commission to satisfy him for his claims against Caffery and Martel and their associates; and that defendant replied that he would see Miller and see what arrangements 'Could be made.
That the claim of the heirs of Miller was not made against “the oil company” as stated in the original answer, but by suit against the Cafferys and Martel, instituted in December, 1907, which was subsequently compromised.
That at no time did defendant ever agree to give said Miller any portion of his commission, except upon condition that he was to receive 5 per cent, of the entire output of oil. That the contract was repudiated by the oil company, and, as the court only sustained defendant’s demand to the extent of 5 per cent, on the oil received by said company as a royalty, then that defendant was no longer bound by his first promise to Miller, even if the latter had not repudiated and refused to accept the same.
Defendant avers that the total of commissions, less costs and expenses, received by *654 him, amounted to $5,289.36, and that plaintiffs in no event can recover more than one-fifth of the samé.
There was judgment for the defendant, and the plaintiffs have appealed.
Mr. D. Caffery and Mr. Crusel both state that it was understood that Branch K. Miller should have an interest in the commissions in question, but that no quantum or amount was specified.
It appears from their letters that Crusel and Miller endeavored to reach an agreement, but failed to do so. In his letter of April 4, 1904, Mr. Miller wrote:
“As I was to share in equal portions with you, or, in other words, to receive two and one-half per cent., on the assumption that your remuneration is five per cent., I have an important interest in the fixing of the amount that the company may allow.”
The same day Mr. Crusel replied as follows:
“I have your valued favor of even date, and have duly noted contents.
“My compensation in the Houssiere-Latreille Oil Company deal being 5 per cent., I have made you the promise that I would give you 1 per cent, out of my 5 per cent. This promise was made you at the suggestion of Mr. D. Caffery, Jr. Your letter to me to-day states that you are to receive 2% per cent, out of my 5 per cent. In conversation with you yesterday, I thought that I had dispelled this impression, and that you will understand the amount to be 1 per cent.”
The next day, Mr. Miller replied that he had at all times understood that he was to receive one-half of whatever amount was allowed as commissions, that in the conversation referred to he had not agreed to receive less than one-half, and had no intention of so doing.
On April 7, 1904, Mr. Crusel replied, in part, as follows:
“I note you do not remember agreeing to receive any less than one-half of my commission. My remembrance is very distinct. My promise to you was 1 per cent, out of 5 per cent, of my commission, which I understood I was to get; the 1 per cent, to you was a gracious act, as you gave me no assistance in making the deal, and you told me that you claimed absolutely nothing, as you could expect no compensation from me. I did not require or use your services professionally or advisorily in this-deal. I regret the misunderstanding exceedingly. I propose to carry out my promise which was 1 per cent, out of 5 per cent, -and I trust that you will be satisfied with that, and that at your leisure you will some time remember the exact conversation, as I would be very sorry to be in the attitude towards you of not carrying out the promise which I made.”
It appears from the letters of the defendant that there was a verbal agreement between him and Miller fixing the latter’s interest in the contract at one-fifth of the 5 per cent, commission.
It is equally clear that the letters of Miller positively repudiated the verbal agreement as stated by the defendant’s letters, and insisted on an allowance of one-half of the commissions.
The parties could not agree, and here the negotiations terminated, and were never renewed. It appears from the testimony of Gen. T. M. Miller that Branch K. Miller said that he never had a cent for his services in the Jennings Oil Company’s litigation, and that his clients wanted him to look for his compensation to Mr. Crusel, or to some contract Mr. Crusel had with one of the companies.
In 1907 the heirs of Branch K. Miller sued the Cafferys and Martel for fees for services rendered in the year 1903. Their claim was for $10,000, and they compromised for" $3,000.
The belief of Mr. Miller that his fees would be compensated by his share in the Crusel contract, doubtless, led him to demand an equal share, and to refuse positively to- accept less.
The intended stipulation in favor of Miller never became operative because his share in the prospective commissions of the defendant was never fixed or determined by agreement of the parties in interest.
The verbal agreement between Caffery and Crusel contemplated that the share of Miller should be fixed by agreement between him and Crusel. These parties could not agree, *656 and hence the share of Miller was never determined.
Seven years later the plaintiffs in this suit, as the heirs of Miller, accepted the stipulation in his favor, meaning the proposition of Crusel, which Miller had rejected in his lifetime. When in the course of business negotiations a proposition is made and rejected, that ends the matter. In the instant case, Crusel was willing to allow Miller time for reflection and a change of mind. But Miller died two years later without ever having notified Crusel that he^had changed his mind, and was ready and willing to accept the proposition of Crusel.
The original stipulation in favor of Miller was void for want of certainty as to the benefit to be conferred on him; and, if conditioned on a subsequent agreement between Crusel and Miller, no such agreement was ever perfected between them.
It follows that when this suit was instituted there whs no stipulation pour autrui open for acceptance by the heirs of Miller, who are bound by the refusal of their de eujus to come to an agreement, which was absolutely necessary to vitalize the inchoate stipulation contained in the original agreement.
If we take the viewpoint of Mr. Caffery, the stipulation was in the nature of an honorarium, and the refusal of Mr. Miller to fix the amount by agreement ended the matter.
Judgment affirmed.