CENTRAL TRUST CO. OF NEW YORK v. CHICAGO, R. I. & P. R. CO. et al. (two cases).

(Circuit Court of Appeals, Second Circuit. November 19, 1914.)

Nos. 156, 157.

1. APPEAL AND ERROR (§ 87*)—ORDERS APPEALABLE—MATTERS OF DISCRETION —APPLICATION TO INTERVENE—DENIAL.

The rule that the denial of a petition to intervene is discretionary, and not appealable, is subject to the qualification that the discretion must be exercised in accordance with recognized judicial standards.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 559–569, 577–596; Dec. Dig. § 87.*]

2. PARTIES (§ 41*)—INTERVENTION—RIGHT TO INTERVENE.

Where claimant's rights are finally disposed of, and intervention is necessary for their protection, the right to intervene is absolute.

[Ed. Note.—For other cases, see Parties, Cent. Dig. § 68; Dec. Dig. § 41.*]

3. RAILROADS (§ 186*)—STOCK—MORTGAGES—FORECLOSURE—SALE—INTERVENTION.

Where the only asset of a railroad company was a proportionate amount of the capital stock of a railway company of the same name, the railroad company having mortgaged the stock to secure its bonds, and in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

proceedings to foreclose the mortgage the value of the stock depended largely on the purchaser's getting control of the railway company, and the interest of a protective committee, with which it was alleged the trustee was acting, was adverse to that of nondepositing bondholders, it was error to deny the petition of one representing substantial rights of nondepositing holders to intervene, to contest the mode and terms of the sale.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 615, 616; Dec. Dig. § 186.*]

4. APPEAL AND ERROR (§ 87*)—ORDERS APPEALABLE—FINAL ORDER—DETERMINATION OF RIGHTS—PETITION OF INTERVENTION—LEAVE TO INTERVENE—DENIAL.

Where orders denying the petition of one representing nondepositing bondholders to intervene in proceedings to foreclose a mortgage on certain railway stock completely disposed of petitioner's claims and left nothing to be done as to them in the litigation, the orders were final and appealable, under Judicial Code (Act March 3, 1911, c. 231) § 128, 36 Stat. 1133 (Comp. St. 1913, § 1120), though the sale, to which objections were made, was subject to confirmation after it had been held.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 559–569, 577–596; Dec. Dig. § 87.*

Finality of judgments and decrees for purposes of review, see notes to Brush Electric Co. v. Electric Imp. Co. of San Jose, 2 C. C. A. 379; Central Trust Co. v. Madden, 17 C. C. A. 238; Prescott & A. C. Ry. Co. v. Atchison, T. & S. F. R. Co., 28 C. C. A. 482.]

Lacombe, Circuit Judge, dissenting.

Appeals from the District Court of the United States for the Southern District of New York.

Suits by the Central Trust Company of New York against the Chicago, Rock Island & Pacific Railroad Company, in which Nathan L. Amster applied to intervene. From orders denying such application, intervener appeals. Reversed.

Louis Marshall, of New York City, for appellant.

A. H. Van Brunt and H. B. Stimson, both of New York City, for appellees.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. These are appeals from two orders of the District Court denying the petition of one Nathan L. Amster for leave to intervene in a foreclosure suit brought by the Central Trust Company as trustee against the Chicago, Rock Island & Pacific Railroad Company, and also motions by the trustee to dismiss the said appeals.

The Chicago, Rock Island & Pacific Railroad Company is the owner of $71,353,500, par value, of the capital stock of the Chicago, Rock Island & Pacific Railway Company outstanding to the amount of $75,-000,000, which is substantially the only property it has. August 1, 1902, the Railroad Company mortgaged this stock to secure the payment of its 4 per cent. collateral bonds due November 1, 2002, aggregating $71,353,000—that is, one bond of $1,000 for every 10 shares of stock—and appointed the Central Trust Company of New York trustee under the mortgage.

February 26, 1914, it being quite apparent that the Railway Company could declare no dividend on its stock, and therefore that the

Railroad Company, which had no other source of income, would default on the interest of its bonds due May 1st. a protective committee of bondholders was formed. The president of the trustee became chairman of this committee, its counsel became the counsel of the committee, and the trustee the depositary for the committee. May 1st the Railroad Company defaulted in the payment of its interest. September 2d the Trust Company, the 90-day period having expired, provided in the mortgage, declared the principal of the bonds due and began a suit to foreclose the mortgage. September 16th the Railroad Company filed an answer admitting the allegations of the bill. Thereafter the Trust Company submitted the decree of sale to the court.

September 28th Amster, as owner of bonds to the amount of $350,000 and as representing the owners of bonds to upwards of $700,000, applied to the District Court for leave to intervene in the foreclosure suit and be made a party defendant. At this time there were deposited with the protective committee bonds to the amount of $18,000,000. The petition set up no defense to the foreclosure suit, but only objected to the mode of sale. It alleged as grounds of intervention that the trustee was not fairly representing the petitioner and the bondholders represented by him, but was acting in harmony with financial interests controlling the committee, which were irreconcilable with the interests of himself and the bondholders he represented. In respect to the proposed decree he objected that an immediate sale of the mortgaged stock at a time of such financial stringency would make it impossible for any third party to bid successfully against the committee, especially upon notice giving little time for the scattered bondholders to be heard from; that the sale of the bonds in one block would be destructive of the rights of the nondepositing bondholders; and that an upset price should be fixed.

October 10th the District Judge signed the proposed decree and denied the petition, on the ground that the trustee had done nothing justifying intervention. The sale has been fixed for November 28th. October 13th he allowed the petitioner's appeal.

October 17th the petitioner filed a second petition for leave to intervene, alleging that he represented $3,000,000 of bonds in addition to his own, and that since the order denying his first petition the protective committee had published a plan prepared by counsel who were also counsel for the trustee which he criticized as unfair to the nondepositing bondholders. At this time there were deposited with the committee not over 40 per cent. of the bonds. October 23d the District Judge denied this petition, saying:

"It is, of course, impossible to predict the result at the foreclosure sale; but, as heretofore pointed out, any bondholder will have the fullest opportunity to be heard upon any application to confirm the sale, and notice of such application is by the terms of the decree to be widely published. It must be assumed that the sale—whether the purchase be made by the committee or by others—will be confirmed only if it appears that it is for the benefit of the bondholders so to do."

October 26th he allowed the petitioner's appeal. Both appeals were argued together.

[1, 2] The general rule is that the denial of a petition to intervene is discretionary and therefore not appealable. The discretion, however, must be exercised in accordance with recognized judicial standards. There is a class of cases where the claimant's rights are finally disposed of and intervention is necessary for their protection, in which the right to intervene is absolute. Cases recognizing the existence of these two classes are Credits Commutation Co. v. United States, 177 U. S. 311, 20 Sup. Ct. 636, 44 L. Ed. 782; Farmers' Loan & Trust Co. v. Northern Pacific Railway Co. (C. C.) 66 Fed. 169; Farmers' Loan & Trust Co. v. Cape Fear & Yadkin Valley Railway Co. (C. C.) 71 Fed. 38; Minot v. Mastin, 95 Fed. 734, 37 C. C. A. 234; United States v. Philips, 107 Fed. 824, 46 C. C. A. 660.

[3] It is not always easy to draw the line. The circumstances of this case are such as to cause us to think that the intervention should have been allowed. Very substantial rights are involved and serious objections made. The attitude of the trustee is ambiguous. The property is railroad stock. The value of it depends largely upon the purchaser's getting control of the Railway Company. The interest of the protective committee is to buy the stock as cheaply as possible, while it is the interest of the nondepositing bondholders that it be sold at as high a price as possible. If the sale be confirmed the mortgaged stock may be dissipated.

[4] Objection is made by the trustee that, the sale being subject to confirmation by the court, the orders are not appealable as final decisions within section 128 of the Judicial Code. The orders certainly did completely dispose of the petitioner's claims and left nothing further to be done as to them in the litigation. The fact that the sale is subject to confirmation confers no rights upon him. A resale would be ordered only if the price bid were so inadequate as to shock the conscience of the court, or if fraud were developed in connection with it. If the sale were confirmed, the petitioner, not being a party, could not appeal from the decree and could not again ask the court to pass upon claims as to the mode of sale theretofore disposed of. See Standley v. Roberts, 59 Fed. 836, 8 C. C. A. 305, and the authorities discussed by Judge Sanborn. The case of Williams v. Morgan, 111 U. S. 684, 4 Sup. Ct. 638, 28 L. Ed. 559, on which counsel for the trustee place great reliance, is different. There the dispute was as to the amount of compensation awarded to the trustee which was to be paid by the bondholders. Obviously the trustee could not represent them in this controversy, and the bondholders were there allowed to appeal from the order of confirmation.

It must be understood that we express no opinion whatever as to the merits of the petitioner's claims, but simply find that they are of such a character as to entitle him to intervene.

The motions to dismiss the appeals are denied, and the orders reversed.

LACOMBE, Circuit Judge (dissenting). I dissent from the decision of the majority of the court because I do not think the orders denying leave to intervene are final orders. The sale effects nothing until it is

confirmed. As I understand Williams v. Morgan, 111 U. S. 684, 4 Sup. Ct. 638, 28 L. Ed. 559, this petitioner could be heard on appeal from the decree of confirmation which would certainly be final. If this be not so, it would seem that, should the District Court refuse to hear any person interested on motion to confirm the sale, or to put him in a position where he could secure a review of such determination (as to the sale), such order would be final.

Dissenting on this ground, I do not find it necessary to express an opinion on any question which has been argued here.