**NEW ORLEANS PUBLIC SERVICE, INC., Plaintiff,**

**Ernest Morial, et al., Movants-Appellants,**

v.

**UNITED GAS PIPE LINE COMPANY, Defendant-Appellee.**

**No. 82–3194.**

United States Court of Appeals, Fifth Circuit.

Nov. 8, 1982.

McGlinchey, Stafford & Mintz, Donald R. Mintz, Constance Charles Willems, New Orleans, La., for movants-appellants.

Lemle, Kelleher, Kohlmeyer & Matthews, C. Murphy Moss, Jr., Robert G. McIver, Victoria L. Knight, New Orleans, La., James M. Costan, Kevin W. McLean, Douglas Knox Bemis, Jr., W. DeVier Pierson, Washington, D. C., for defendant-appellee.

Before GOLDBERG, WILLIAMS and GARWOOD, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Consumers and certain city officials bring this appeal from a district court order denying their motion under Fed.R.Civ.P. 24(a) and (b) for leave to intervene in this lawsuit. We find that the consumers have no right to intervene. However, we reverse the decision denying intervention to the government officials, and remand.

## I. BACKGROUND

New Orleans Public Service, Inc., (NOPSI), is a private corporation holding a franchise agreement with the City of New Orleans to supply public utility service to the Parish of Orleans. NOPSI provides both natural gas and electricity to its customers.

In July 1952, NOPSI executed a contract with the United Gas Pipe Line Co. (United) for the purchase of natural gas that NOPSI would use both for direct resale to its gas customers (resale gas) and as fuel in its electric power plants (power plant gas). Only the power plant gas under the contract is involved in this dispute.

The 1952 Contract set a sale price for the power plant gas. Both parties performed under the Contract without serious difficulty until 1975. A few months before the 1952 Contract was due to expire in 1975, United and NOPSI executed a letter agreement for the continued supply of power plant gas. This 1975 Letter Agreement changed the price and the method of price determination provided in the prior contract.[1] The 1975 Letter Agreement was amended on two occasions in 1978 to alter some provisions of the contract for deliveries effective August 1, 1978.

Acting under the terms of the 1975 Letter Agreement, on March 3, 1981, United proposed a "redetermined rate" on power plant gas, a polite euphemism for a price increase, covering gas deliveries effective May 3, 1981. NOPSI protested the new rates and United amended certain provisions of its March, 1981 proposal. United submitted a final proposal to NOPSI on April 9, 1981.

NOPSI asserts that it initially considered the proposed redetermined price to be merely a power play, and United granted NOPSI two extensions of time to consider the proposals. United informed NOPSI, though, that if it did not accept the proposed price of $3.60 to $4.00 per mcf, United would

---

1. Subpart 4A.2 of the 1975 Letter Agreement, the "redetermination clause," provides as follows:

Effective on or after June 1, 1976 at 7 a. m., Seller shall have the right to periodically institute a redetermined rate. The initial redetermined rate, or any redetermined rate that may be established thereafter pursuant to the terms and conditions herein stated, shall remain in effect for a period of at least twelve (12) months from the date such redetermined rate is instituted.

Seller shall give Buyer not less than sixty (60) days' written notice of the redetermined monthly rate to be instituted by Seller for gas delivered hereunder and Buyer shall notify Seller within thirty (30) days of the date such redetermined rate is to be instituted whether Buyer agrees to such rate and desires to continue purchasing gas from Seller subject thereto. In the event Buyer does not agree to such redetermined rate, Buyer shall cease taking gas on the date such rejected redetermined rate was to be instituted.

charge the full market price for its gas.[2] United estimated the market price at $6.00 to $8.00 per mcf. NOPSI officials believed that United's power play was an illegal form of economic coercion, but their discussions and correspondence with United generated more heat than light. NOPSI's management eventually submitted to the new rate, but only under an express protest that the redetermined rate was impermissible under state law. NOPSI signed the agreements in mid-May, 1981, and filed suit in Louisiana court on May 26, 1981. United, invoking diversity jurisdiction, petitioned for removal to federal district court on June 1, 1981. The dispute covers the validity of the NOPSI-United agreements, the proper rate for power plant gas, and the method of refund, if any.

This appeal, however, does not touch the merits of this dispute. Shortly after the suit was removed to federal court, the mayor of the City of New Orleans moved for leave to intervene in the controversy, pursuant to Fed.R.Civ.P. 24(a) and 24(b). His original claim was as representative of a proposed class of NOPSI's ratepayers. He later amended his motion to include various private electric ratepayers and several members of the New Orleans City Council. Some of the moving parties had paid enough in claimed overcharges on electric bills since the May, 1981, rate redetermination to meet the $10,000 jurisdictional amount in diversity cases. 28 U.S.C. 1332(a). The federal district judge referred the motion to a magistrate, who accepted briefs and held hearings on the matter.

The magistrate ruled that the consumer members of the proposed class, either individually or as a class, had no right to intervene in the action. He further found that the governmental parties had a right to intervene permissively, pursuant to Fed.R. Civ.P. 24(b). The district judge overturned the order of the magistrate in part, holding that neither the consumers nor the government officials could intervene. The district court also denied a stay of proceedings pending an appeal. The attempted intervenors then plugged their appeal into the Circuit, pursuant to 28 U.S.C. § 1291.

We agree with both the magistrate and the district judge that the consumers have no proper claim to intervention as of right under Rule 24(a). Further, we find that the denial to the consumers of permissive intervention under Rule 24(b) was not an abuse of discretion. The mayor and members of the City Council are in a different situation, however. They have a statutory mandate to oversee the operations of public utilities within New Orleans, such as NOPSI. *La.Const.,* art. 6, §§ 4, 6; *State ex rel. Guste v. Council of the City of New Orleans,* 309 So.2d 290, 292 (La.1975). We hold that the denial of their intervention was both erroneous under the requirements of 24(a), intervention as of right, and an abuse of discretion under Rule 24(b), permissive intervention.

## II. GOVERNMENTAL OFFICIALS AS PARTIES

We find that the government officials have both a statutory right and a clear interest in making a contribution to the disposition of this case. We therefore find that the district court erred in denying the government parties leave to intervene as of right, and, in any event, the denial of leave for permissive intervention was an abuse of discretion.

### A. Intervention as of Right

■ Intervention as of right in the federal courts is covered by Fed.R.Civ.P. 24(a).[3]

---

**2.** United could not close the valves on power plant gas deliveries without FERC authorization, 15 U.S.C. § 717f(b), but could charge a "fair market price" for its deliveries.

**3.** Rule 24(a) provides:

*Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

This Circuit has developed a four-pronged framework for interpreting motions for intervention as of right. *Howse v. S/V "Canada Goose I"*, 641 F.2d 317, 320 (5th Cir. 1981); *International Tank Terminals Ltd. v. M/A Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978). First, the application for intervention must be timely. Second, the applicant must have an interest relating to the subject matter of the litigation. Third, the applicant must be so situated that the outcome of the case may, as a practical matter, impair or impede the applicant's ability to protect that interest. Finally, the interest must be one not adequately represented by existing parties.

■ Examining intervention as of right, we find that each of the four necessary factors for intervention is present. *Howse, supra* at 320. First, the motion to intervene was timely, having been made approximately one month after the original federal lawsuit was filed. Second, the members of the City Council have an interest relating to this transaction. Under the city's home rule charter, the New Orleans City Council operates in place of the Louisiana Public Service Commission in regulating the rates of public utilities within the City of New Orleans. *La.Const.*, art. 6, §§ 4, 6; *State ex rel. Guste v. Council of the City of New Orleans, supra.* The members of the City Council apparently have entered this action pursuant in part at least to a June 18, 1981, motion which in turn resulted in a September 17, 1981, resolution of the New Orleans City Council authorizing intervention to protect the public interest.

■ Federal courts are not bound to permit governmental parties to intervene in private suits whenever the agency purports to protect the public interest. The agency, for example, may be seeking to protect a public interest already present before the court or governed by a different government agency. *See, e.g., United States v. Local 638, Enterprise Ass'n of Steam, Hot Water, Hydraulic Sprinkler, Pneumatic*

*Tube, Compressed Air, Ice Machine, Air Conditioner and General Pipefitters*, 347 F.Supp. 164 (S.D.N.Y.1972) (city permitted to intervene in civil rights suit against unions only upon a showing that plaintiff U. S. Department of Justice was not representing city residents' interests adequately). Yet even these limits are not meant to discourage state or local government intervention as parens patriae. *See Nuesse v. Camp*, 385 F.2d 694, 700 (D.C.Cir.1967) (state banking commissioner granted right to intervene despite presence of federal officials as parties).

In this dispute the City officials are the only government parties seeking to intervene, and they have a statutory obligation to oversee NOPSI's fiscal and public responsibilities. The City Council acts as the regulator of NOPSI's rates. It will have the obligation in the future to determine whether NOPSI's recovery, if any, is sufficient to recover whatever overcharges may have passed through to consumers as a result of the disputed portions of the NOPSI-United Letter Agreement.

Determining the proper redetermined rate for power plant gas in a federal court while excluding the rate regulators would cause needless duplication of the same basic factual testimony. The 100% pass-through of the price increase makes clear the effect that the contract in question will have on rates in the future. In this dispute, the government's interests are sufficient to permit intervention as of right. *See Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967) (State of California permitted intervention as of right in antitrust action involving local gas supplier).

The third requirement for intervention as of right, that the potential intervenor be so situated that an adverse decision will impair his rights, is satisfied here as well. If NOPSI does not pursue this lawsuit adequately or fully, it might not establish its full legal rights vis a vis United. In the absence of the City Council in the case, it would only

be later when the Council sits to determine the proper fuel cost allowance to be passed through to consumers that it would discover whether NOPSI had obtained all that it was entitled to legally. At that point, seeking additional recovery for the benefit of consumers would be an onerous burden. United would be exempt from further action under the principle of res judicata. NOPSI's shareholders would resist any chargeback against NOPSI's corporate assets. Further, any charges that lowered earnings to NOPSI's shareholders would result in a higher cost of capital. It would also raise issues relating to the well-established fair return on investment requirement. *See, e.g., United Gas Public Service Co. v. State of Texas,* 303 U.S. 123, 142, 158 S.Ct. 483, 492, 82 L.Ed. 702, *reh'g denied,* 303 U.S. 625, 58 S.Ct. 483, 82 L.Ed. 702 (1938). Higher bond interest expenses or lower stock prices ultimately would reflect in higher electric bills, just the opposite of what the City Council intends.

Fourth, intervention as of right requires an interest that is not represented sufficiently by the parties. The interest at stake here is the regulator's interest, which is exercised on behalf of the public. Although NOPSI correctly represents that it is seeking ratepayer recovery, NOPSI's authority to do so comes from its franchise agreement from the New Orleans City Council. But the City Council is undertaking to insure that its regulatory interests are adequately represented. It cannot be said that the regulator's interests and the interests of the regulated are identical. This is one of the classic governmental confrontations. The regulators have independent interests in this litigation that NOPSI does not represent. The Council members have a right to believe that the case will be resolved more accurately and more quickly with their presence, thus keeping the cost of litigation down, and ultimately electric rates down as well.

We hold that the New Orleans City Council has the right to intervene under Fed.R. Civ.P. 24(a).

### B. Permissive Intervention

An alternative basis for the City Council's motion for intervention is Fed.R.Civ.P. 24(b), Permissive Intervention, which is set forth in the margin.[4] Since we find a right to intervene under Rule 24(a), we discuss permissive intervention only briefly as a means of forestalling a possible assertion by United that the issue would be settled in its favor by a reversal of our holding on intervention as of right.

Rule 24(b)(1) is not applicable here since the basis of the City Council's regulatory authority is state rather than federal law. Rule 24(b)(2) requires, as a threshold consideration, a common question of law or fact with the main dispute. The determination is not discretionary; it is a question of law. *Stallworth v. Monsanto Co.,* 558 F.2d 257, 269 (5th Cir. 1977). The government parties are asking to participate in the analysis of the same contract that has created the initial NOPSI-United dispute. There can be no question but that the government parties are presenting similar questions to those in the main suit. The only issue remaining is whether permitting intervention will further the efficient resolution of this controversy.

We fail to see how the City's intervention will substantially complicate the federal

---

4. Rule 24(b) provides:

   *Permissive Intervention.* Upon timely application anyone may be permitted to intevene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

**1209**

court proceedings. The district court has procedural tools at its disposal to limit duplicative arguments or. wasteful testimony. Intervention will, though, help to eliminate future litigation by settling related legal claims simultaneously. Nor will intervention prejudice the rights of the existing parties. Since the government rate regulators will need to determine the reasonableness of any recovery and the method of any refund to consumers, government intervention will not take away any rights from NOPSI or United. United will continue to defend the underlying contract dispute as it would in the absence of additional parties. NOPSI's discretion to fashion its claims and propose recovery procedures is limited by the supervisory powers of its rate regulators. The City Council's intervention does not limit NOPSI's authority to pursue this suit; rather, it merely accelerates the public sector review of claims that eventually will require public scrutiny in any event.

The chief advantage of government intervention is that it will heighten protection of the public's interests in this litigation. This will minimize any future protests that consumers otherwise might have against the City Council for failure properly to carry out its governmental regulatory responsibilities. *See White v. Louisiana Public Service Comm'n,* 259 La. 363, 250 So.2d 368, 371 (1971) (private sector action against PSC on allegations of arbitrary and capricious actions); 45 La.Stat.Ann. § 1192 (West 1951) (permitting judicial reviews of PSC actions). *See generally Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Natural Resources Defense Council, Inc. v. EPA,* 489 F.2d 390 (5th Cir. 1974), *rev'd on other grounds sub. nom. Train v. Natural Resources Defense Council, Inc.,* 421 U.S. 60, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975). We hold today that it constituted an abuse of discretion on the facts of this case to deny a motion for leave to intervene by the government authorities with rate regulatory responsibilities affecting both the underlying dispute and an existing party to the suit.[5]

## III. CONSUMER INTERVENTION

### A. Who pays the bills?

The remaining members of the proposed class are various consumers of electricity in the Parish of Orleans. Some of these are named consumers who claim to have paid over $10,000 each in alleged overcharges for power plant gas, in an apparent effort to invoke independent diversity jurisdiction.[6] Other named consumers and the unnamed members of the proposed class are NOPSI customers who do not necessarily pay enough for electricity to meet the jurisdic-

---

**5.** The government parties satisfy subject matter jurisdictional requirements under the diversity provision, 28 U.S.C. § 1332. We therefore need not reach the question of whether independent grounds for subject matter jurisdiction are necessary to examine the claims of parties intervening under Rule 24(b). At least some cases suggest such a requirement. *Smith Petroleum Service, Inc. v. Monsanto Chemical Co.,* 420 F.2d 1103, 1113 (5th Cir. 1970) (dictum); *Humble Oil & Refining Co. v. Sun Oil Co.,* 190 F.2d 191, 197 (5th Cir. 1951) *cert. denied,* 342 U.S. 920, 72 S.Ct. 367, 96 L.Ed. 687 (interpreting pre-1966 version of current Rule 24(b)); *Clanton v. Orleans Parish School Board,* 72 F.R.D. 164 (E.D.La.1976) (citing pre-1966 authority). Yet in *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967), the Supreme Court recognized that the current, 1966 version of Rule 24 expands the opportunities

for intervention. *Id.* at 133–34, 87 S.Ct. at 935–936. In that case, the Court permitted the State of California to intervene in an antitrust action involving a major gas supplier to the State. Yet in cases where jurisdiction depends on factors other than the very nature of the claim, the jurisdictional requirements may require a court to draw the line somewhere on parties seeking to intervene. "It is not always easy to draw the line." *Id.* at 134, 87 S.Ct. at 936, *quoting Central Trust Co. of New York v. Chicago, R. I. & P. R. Co.,* 218 F. 336, 339 (2d Cir. 1914).

**6.** Since we find no grounds for permitting consumer intervention in this case, we need not reach the question of whether an independent ground for subject matter jurisdiction is necessary under Rule 24(b). *See* note 5, *supra.*

tional amount. Although we are not unsympathetic to the issues that the consumers raise, we do not find them sufficient to support a motion to intervene under either Rule 24(a) or 24(b).

The consumers present a number of claims in support of their motion to intervene. Central to all of them, however, is their contention that they have more to lose than NOPSI in the resolution of the contract dispute. The consumers point out that NOPSI is not at risk as to any of the additional costs of power plant gas. Under current rate structures, 100% of the cost increase of power plant gas is passed through to the consumer through electric rate adjustments.

■ NOPSI's rate structure for electricity, while perhaps complicated in its specifics, is clear on its face. Each monthly consumer bill includes both a basic charge for the amount of electricity used and a fuel cost adjustment, which reimburses NOPSI for the cost of power plant gas under the United contract. Any increase in the cost of power plant gas is added to the fuel cost adjustment, subject to the periodic review of the government regulators. The consumers assert that their financial stake in the outcome of this suit, stemming from NOPSI's ability to pass through the entire cost increase in power plant gas, compels a finding of intervention as of right. We do not agree.

### B. Who's got the power?

Intervention as a matter of right under Rule 24(a) requires four factors to be met, as this Court set out in *Howse v. S/V "Canada Goose I"*, *supra*. As noted above, failure to meet any one of these requirements negates the right to intervene.

1. Timely application.—First, the application for intervention must be timely. There was a timely application for intervention in this case. Move to intervene was made shortly after the filing of suit, during the preliminary stages of discovery.

2. Related interest.—Next, the applicant must have an interest relating to the property or transaction which is the subject of the action. We conclude that the consumers do not have the requisite interest. The consumers make a number of contentions on this point. First, they claim to be third party beneficiaries of the United contract. They claim, as a matter of Louisiana law, that they are beneficiaries of a *stipulation pour autrui* under the NOPSI—United agreement. Article 1890 of the Louisiana Civil Code provides:

A person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract can not be revoked.

■ The consumers are not in a position to claim the advantage of a *stipulation pour autrui*. First, under Louisiana law a *stipulation pour autrui* is valid only if the benefit to the third party is a condition of or consideration to the contract. There is every indication that NOPSI entered into its agreements with United in the ordinary course of its business, not with the express intention of conferring a pecuniary benefit upon the customers. *City of Shreveport v. Gulf Oil Corp.*, 431 F.Supp. 1, 4 (W.D.La. 1975), *aff'd per curiam*, 551 F.2d 93 (5th Cir. 1977). Furthermore, a *stipulation pour autrui* is void for uncertainty under Louisiana law if the declared benefit to the third party is not fixed. *Miller v. Crusel*, 135 La. 649, 65 So. 873 (1914). The consumers evidently assert a fixed benefit was assigned when the contracts were prepared. There is no evidence to show that this was a formal assignment, or even that a benefit to the consumers resulted. There is no way to ascertain the rate consumers would have paid for gas without this contract; it therefore cannot be gainsaid that the third party benefit is fixed. Finally, while it is possible that the consumers have enjoyed a benefit from the bulk contracting power of NOPSI

over the years, such benefit is a mere incident of being a direct customer of NOPSI, not of any formal third party beneficiary relationship.

■ The consumers' next claim is that the United-NOPSI agreements amount to a cost-plus contract in favor of the consumers. They then infer a right to intervene on the analogous notion that a buyer under a pre-existing cost-plus contract may have standing to bring suit for violations of the antitrust laws. They rely upon the United States Supreme Court's analysis in *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968). In *Hanover Shoe*, the antitrust defendants contended that the plaintiff wholesalers had no injury, since they had merely incorporated the illegal overcharges into their resale price. They claimed that any cause of action was in the hands of consumers, who were not present in the litigation. The Court rejected this argument, finding that the direct buyer and not the ultimate purchaser has standing to sue in antitrust. It reasoned that a contrary result would place an unreasonable burden on private antitrust enforcement. However, the *Hanover Shoe* Court recognized a possible exception where the wholesaler is merely a conduit for a consumer under a cost-plus contract. In such a case, the Court noted that the proper party to the suit might be the ultimate purchaser rather than the middleman. *Id.* at 494, 88 S.Ct. at 2232. *But see Donson Stores, Inc. v. American Bakeries Co.*, 58 F.R.D. 481, 483 (S.D.N.Y.1973) (*interpreting Hanover Shoe*) (consumer class has no right to intervene in private antitrust action against baking companies, despite showing that baked goods are sold through retailers on a cost-plus basis). The consumers asking intervention in this case contend that this exception noted in the *Hanover Shoe* dictum covers their right to intervene.

We must short-circuit the consumers' attempt to stretch this exception to cover their position. First, there is no policy consideration encouraging private enforcement of private contract disputes as there is behind the antitrust laws. Second, this case differs from a typical commercial suit in that the "wholesaler" here, NOPSI, is also obligated to serve in the public interest and thus in the interests of its customers, and to protect those interests adequately. NOPSI is seeking recovery for itself to keep its rates down and please its regulator. But it is also seeking recovery for its ratepayers. Absent a showing that the combined forces of NOPSI and the City Council are not fulfilling this second or public duty, we cannot find the consumers' interest unrepresented, as they might be in an antitrust framework.

Next, the consumers contend that they have an economic interest in the litigation sufficient to confer a right to intervene. There are several problems with such a claim. The consumers offer no specific showing that economic injury is certain upon an outcome of the case unfavorable to their interests. While it is likely that electric rates have gone up as a result of United's alleged improper actions and might go up further in the future, it is also possible that rates would have gone up even more if the consumers had been the ultimate sufferers of another method of contracting for power plant gas. The record shows that when the contested redetermined rate for power plant gas rose to between $3.60 and $4.00 per mcf, the open market price was $6.00 to $8.00 per mcf. The consumers make no showing that the economic injury was real.

Other federal courts, on occasion, have permitted intervention based in part on economic interests. Courts permitting intervention for economic interests generally have found additional factors for their decision, however. For example, the court in *Ford Motor Co. v. Bisanz Bros.*, 249 F.2d 22, 28 (8th Cir. 1957), allowed Ford to intervene in an injunction proceeding that would have severed Ford's only rail link to one of its manufacturing plants. Even though Ford

could not show that the existing parties to the dispute owed Ford any duty to keep the rail link intact, the court found that as a practical matter Ford would be bound by the result and suffer a permanent deprivation of an "essential" economic interest. The court found that the "practical necessities" created an absolute right to intervene under Rule 24(a). *Id.*

In *Shultz v. United Steelworkers of America,* 312 F.Supp. 538 (W.D.Pa.1970), a union member sought to intervene in a challenge of the union election that named him district director. The court permitted intervention by finding a property interest in employment. Similarly, in *New York Public Interest Research Group, Inc. v. Regents of University of State of New York,* 516 F.2d 350 (2d Cir. 1975), pharmacists were permitted to intervene in a case evaluating regulations of the pharmacy profession. The Second Circuit found that the pharmacists' interests in the continued health of their profession, coupled with the economic impact the rules would have on them, justified intervention. *Id.* at 352. Yet in these and similar cases, courts at least have identified the source, if not the exact strength, of the declared interest.

■ We acknowledge that the consumers will pay for the majority of, if not the entire, increase in the cost of gas. This financial burden makes consumers justifiably interested in the progress of this litigation. Yet the consumers created a governmental regulatory body to protect their interests in their dealings with the "natural monopoly" of NOPSI. *See Otter Tail Power Co. v. United States,* 410 U.S. 366, 389, 93 S.Ct. 1022, 1035, 35 L.Ed.2d 359 (1973) (Stewart, J., dissenting); L. Sullivan, *Antitrust* § 239 at 744 & n.1 (1977). NOPSI's business dealings are imbued with a public duty, and government regulators supervise NOPSI's performance of that duty. The regulator, the City Council, by its motion to intervene has shown a strong desire to protect the consumer economic interests which lie behind the NOPSI-United dispute. Absent a showing that the regulating body is ill-equipped or unwilling to protect the consumers' economic interests, we find no satisfactory justification for direct consumer intervention on grounds of their possible financial burden.[7]

This is not a situation where the consumers attack the actions of the regulatory body. This case is one large step removed. It is a private contract dispute between a private sector utility and a natural gas supplier. Even the regulator is only indirectly involved since it has no power to deal with the terms of the contract as such. The consumers are even further removed.

By denying the consumers their right to participate directly in this contract dispute, we do not foreclose any future challenge to the rate regulator's actions, if such a challenge would be appropriate. *Office of Communication of the United Church of Christ v. FCC,* 359 F.2d 994 (D.C.Cir.1966) (public interest challenge of administrative action); *Scenic Hudson Preservation Conference v. FPC,* 354 F.2d 608 (2d Cir. 1965) *cert. denied,* 384 U.S. 941, 86 S.Ct. 1462, 16 L.Ed.2d 540 (1966) (same). But such an action necessarily is overhasty before the rate regulators have had an opportunity to intervene on behalf of the public interest. *Mississippi Valley Gas Co. v. FERC,* 659 F.2d 488, 497 (5th Cir. 1981) (requirements of ripeness for review of agency action).

■ Finally, the consumers claim a right to intervene based on the Natural Gas Act, 15 U.S.C. § 717–717w. It is true that the Federal Energy Regulatory Commission (FERC) may permit consumer interests to intervene in agency proceedings under the

---

7. *See Environmental Defense Fund, Inc. v. Higginson,* 631 F.2d 738, 740 (D.C.Cir.1979) (where governmental parties already present in case, private parties must make more than a minimal showing of inadequate representation).

Natural Gas Act.[8] However, the case before this Court is not subject to the agency's jurisdiction. The merits of the case turn on a proper rate for power plant gas, a rate over which the FERC has no jurisdiction. The fact that some issues under the Natural Gas Act may arise in the suit is not sufficient to confer a right to intervene. The consideration of standing in a federal court differs from that of an administrative agency, because an "agency's responsibility for implementation of statutory purposes justifies a wider discretion, in determining what actions to entertain, than is allowed to the courts by either the Constitution or the common law." *Ecee, Inc. v. FERC,* 645 F.2d 339, 349–50 (5th Cir. 1981) (examining standing to protest in FERC proceedings). Furthermore, there is no implied private right of action under the Natural Gas Act. *Pennzoil Co. v. FERC,* 645 F.2d 360, 384 n.49 (5th Cir. 1981), *cert. denied,* 454 U.S. 1142, 102 S.Ct. 1000, 71 L.Ed.2d 293 (1982).

3. Disposition Will Not Impair Consumer Rights.—The third requirement for intervention as of right is that the consumers *must be so situated that an adverse decision would impair their own rights.* Such is not the case here. NOPSI has made vigorous representations in district court that any recovery they make in this action will be passed through in its entirety to the consumers. NOPSI shareholders will not share in any part of the recovery, if there is one. The consumers have presented no evidence that a decision in this case in their absence would impair their rights. NOPSI has the financial resources to pursue this lawsuit aggressively. It apparently has been doing so up to this point, even if it is assumed it is not directly at stake financially.

In this case, however, NOPSI does have a personal financial stake in defending the lawsuit vigorously. The company is closely regulated by government authorities, and it is permitted to charge only rates that are reasonable and in the public interest. It has a duty to minimize the ultimate cost to the consumer, whether that cost is hidden in the basic electric rates or explicit through a cost surcharge. If NOPSI does not defend this lawsuit vigorously, the governmental rate regulators will not permit NOPSI to recover the costs of defense from consumers. 45 La.Rev.Stat. § 1176.[9] Furthermore, future rate increases and fuel adjustment pass-throughs could be diminished to reflect NOPSI's failure to pursue the most cost-effective course on behalf of its customers.

Even if NOPSI were not to defend this lawsuit vigorously, the intervention of the City Council puts before the court the regu-

8. *18 C.F.R. § 1.8 (1982) provides in part:*

   (b) *Who may petition.* A petition to intervene may be filed by any person claiming a right to intervene or an interest of such nature that intervention is necessary or appropriate to the administration of the statute under which the proceeding is brought. Such right or interest may be:

   (1) A right conferred by statute of the United States.

   (2) An interest which may be directly affected and which is not adequately represented by existing parties and as to which petitioners may be bound by the Commission's action in the proceeding (the following may have such an interest: Consumers served by the applicant, defendant, or respondent; holders of securities of the applicant, defendant, or respondent; and competitors of the applicant, defendant, or respondent).

   (3) Any other interest of such nature that petitioner's participation may be in the public interest.

Subsection (b)(2) provides authority for a consumer right of intervention not unlike the requirements of Fed.R.Civ.P. 24(a), while subsection (b)(3) allows for a permissive right to intervene similar to Rule 24(b). We need not reach the question of whether these regulations should be interpreted more broadly than the corresponding Rules of Civil Procedure, since the substantive dispute at bar does not involve issues falling under FERC jurisdiction.

9. 45 La.Rev.Stat. § 1176 (West 1951) provides in part:

   "The commission and any parochial or municipal body having similar powers in the fixing of just and reasonable rates charged or to be charged by public utilities ... shall have the power to disallow as an operating expense of any public utility such part of the amount so paid by it under any such contract or agreement as the commission or parochial or municipal body may find, after hearing, to be unjust or unreasonable ...."

latory body charged with representing the interests of consumers. The consumers would also have the right to challenge the adequacy of that representation in later proceedings before the City Council. It will properly be the role of the City Council, not that of the federal courts, initially to determine whether NOPSI is meeting its enfranchised duty to provide cost-effective electric service. The New Orleans City Council has by its intervention undertaken to insure that any disposition of this federal court case will not impair consumer rights.

4. Overlapping of Parties' Interests.— The final requirement for intervention as of right is that the intervenor must have an interest that is not represented adequately by the existing parties. The consumers fail in this showing, as well. The consumers are not attempting to show any greater interest than their general interest as consumers. The consumer interest is already being represented in this litigation by NOPSI and by the City Council. The representation by NOPSI and the City Council together is protection of the consumer interest. The consumers have made no showing that NOPSI and the City Council will fall short of adequate representation of their interests especially since they have the later right to challenge the adequacy of that representation. We affirm the denial of intervention as of right to the consumers.

C. Consumer Permissive Intervention.

■ The consumers urge additionally that they should be permitted to intervene permissively under Fed.R.Civ.P. 24(b). We find no abuse of discretion in the district court denying permissive intervention.

Rule 24(b)(2) requires a threshold determination that "the applicant's claim or defense and the main action have a question of law or fact in common." Fed.R.Civ.P. 24(b)(2); *Howse v. S/V "Canada Goose I"*, supra at 322; *Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977). If this requirement is met, then the district court may exercise its discretion in determining whether to permit intervention. We do find that the consumers pose similar questions of law and fact with the main action. Indeed, they seek the same basic recovery that NOPSI is seeking on their behalf. Yet, examining the trial judge's discretion, we do not find it patently unreasonable that he denied a consumer class leave to intervene.

The central question in examining a motion for permissive intervention is whether or not such intervention would further the interests of justice, the rights of the parties, and efficient judicial administration. In this case, the common interests are being represented by both NOPSI and the City Council. The trial judge properly exhibited concern about the costs to judicial economy of permitting unnecessary parties to join the litigation. His conclusion evidences his belief that the parties to the contract were capable of resolving their contract disputes without the intervention of the buyer's customers. We add that with the intervention of the City Council any doubts about the representation of the somewhat remote interests of the consumers are removed.

■ We find no error in the denial of intervention to consumers as of right, and no abuse of discretion in the denial of permissive intervention. Since a denial of permissive intervention, absent an abuse of discretion in the district court, is not an appealable order, we therefore must dismiss the appeal as it pertains to the consumers and Rule 24(b) permissive intervention. *Woolen v. Surtran Taxicabs, Inc.*, 684 F.2d 324 (5th Cir. 1982); *Weiser v. White*, 505 F.2d 912 (5th Cir. 1975), cert. denied, 421 U.S. 993, 95 S.Ct. 1998, 44 L.Ed.2d 482 (1975).

## IV. CONCLUSIONS

We hold that the public officials and agencies have a right to intervene under Fed.R.Civ.P. 24(a). In addition, the denial of their motion to intervene permissively under Rule 24(b) was an abuse of discretion. However, we affirm the denial of the pri-

vate consumers' attempt to intervene as of right under Rule 24(a). And, finding no abuse of discretion in denial of the consumers' request for permissive intervention, Rule 24(b), we dismiss that portion of the appeal.

THEREFORE, AFFIRMED IN PART, DISMISSED IN PART, REVERSED IN PART AND REMANDED.

GARWOOD, Circuit Judge, specially concurring:

I join in so much of the majority opinion as affirms the denial of the consumers' attempted intervention as of right under Rule 24(a) and as holds there was no abuse of discretion in denying their request for permissive intervention under Rule 24(b). I likewise join in that portion of the majority opinion holding that it was an abuse of discretion to deny the city officials' requested permissive intervention under Rule 24(b). I therefore find it unnecessary to reach the question of whether the city officials were entitled to intervene as of right under Rule 24(a), although I have serious doubts whether the requisite legally protectable interest has been shown.

As I understand it, the city officials seek to intervene only to assert rights having their exclusive source in the contract between NOPSI and United. Normally, only those who are parties to a contract, or those holding under them, or third-party beneficiaries, possess any of the substantive rights arising from the contract. We have held, correctly I believe, that none of those seeking intervention are third-party beneficiaries. And none of them claims to be a party to the contract or to hold any of NOPSI's rights under the contract. Accordingly, this case is quite unlike one where those seeking intervention do so for the purpose of asserting a right grounded in statute or in some general rule of law, a right whose existence does not depend on the agreement of the parties to the lawsuit and which the parties to the lawsuit lack legal power to abrogate. One may be allowed to intervene to complain of or prevent a statutory violation, for example, even though his injury may be more remote and indirect than that of the existing party plaintiff or even though the existing plaintiff is the only one authorized to institute the suit. But that is not this case. I do not understand the appellants to contend, for example, that it would be *illegal* for NOPSI and United to have voluntarily agreed to the price which United claims they did so agree to, or for NOPSI and United to *now* so agree, should they wish to. There is no claim of conspiracy or improper collusion between NOPSI and United.

Nevertheless, NOPSI and the City have a special relationship. As the majority points out, the City has the duty to regulate NOPSI's electric rates, and in doing so to disallow as an operating expense, otherwise recoverable through NOPSI's charges for electricity, fuel costs found to be unjust or unreasonable. While this protects the City to a large extent, it also reflects the City's particular interest in NOPSI's acquisition of fuel at reasonable costs. This alone, however, would not necessarily mean that intervention should be granted, for the city officials do not suggest that NOPSI has no right to contract for fuel without their permission.[*] The City's regulatory right, however, is NOPSI's risk. If NOPSI fails to prevail in this case to the extent the City believes it should, NOPSI faces the prospect that in subsequent proceedings with the City it will have to "swallow" all increased fuel costs. Perhaps NOPSI has the right to run that risk. But it has chosen not to do so. It has supported the City's intervention. In one proceeding, with all parties bound, NOPSI's rights can be determined, thus serving the interests of judicial econo-

---

[*] Nor, would I suppose that the City's and its citizens' general economic interest in NOPSI's financial health, which would ultimately tend to be reflected in NOPSI's rates due to cost of capital considerations, allows the City to intervene in any suit to which NOPSI is a party and which may have a material effect on its balance sheet.

my and preventing possibly inconsistent results.   Intervention by the city officials does not significantly prejudice United, for NOPSI remains in the suit and no rights are asserted against United which could not be and are not being fully asserted against it by NOPSI.   If the intervention of the city officials prejudices any party's rights, it is NOPSI which is prejudiced in its ability to enforce, defend and settle its rights under the contract.   But NOPSI has supported the intervention.