CAJUN ELECTRIC POWER
COOPERATIVE, INC.,
Plaintiff–Appellee,

v.

GULF STATES UTILITIES, INC.,
Defendant–Appellee,

v.

LOUISIANA PUBLIC SERVICE COM-
MISSION, Movant–Appellant.

No. 90–3839.

United States Court of Appeals,
Fifth Circuit.

Aug. 26, 1991.

Michael R. Fontham, Paul J. Zimmering, Alex J. Peragine, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., for Louisiana Public Service Com'n.

John H. Runnels, Tom F. Phillips, Taylor, Porter, Brooks & Phillips, Baton Rouge, La., for Gulf States Utilities Co.

John Schwab, John M. Sharp, Schwab & Walter, Baton Rouge, La., David L. Campbell, Joseph L. McReynolds, Deutsch, Kerrigan & Stiles, New Orleans, La., Spiegel & McDiarmid, Ballard, Kharasch, Morse, Garfinkle, Washington, D.C., for Cajun Elec. Power Co-op.

Before REYNALDO G. GARZA, HIGGINBOTHAM and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The Louisiana Public Service Commission appeals the denial of its motion to intervene under Fed.R.Civ.Pro. 24. We affirm.

I.

Cajun Electric Power Cooperative, Inc. (Cajun), a nonprofit rural electric cooperative, and Gulf States Utilities Company (Gulf), a publicly owned electric utility, entered a Joint Operating Agreement (Agreement) in 1979. Under the Agreement, Cajun agreed to contribute thirty percent of the construction and operating costs of Gulf's River Bend Nuclear Power Plant in exchange for thirty percent undivided own-

ership. Gulf retained sole construction and operating authority. During negotiations, Gulf allegedly represented to Cajun that total costs of the project would be $980 million and concealed estimates that costs could reach as high as $1.9 billion. The actual costs eventually totalled $4.4 billion, with Cajun's share reaching $1.4 billion.

Cajun filed suit in federal court against Gulf in 1989, claiming that Gulf fraudulently induced it to enter into the Agreement and that Gulf breached its fiduciary duties under the Agreement. The jurisdictional basis for the action was diversity: Cajun is a citizen of Louisiana for jurisdictional purposes and Gulf is a citizen of Texas. Gulf filed an answer and a counterclaim for an accounting. The action is now in the early stages of discovery; the discovery plan submitted by the parties contemplates document production through November of 1991.

Both Cajun and Gulf are subject to the regulatory authority of the Louisiana Public Service Commission (LPSC). The LPSC moved to intervene in the dispute between Cajun and Gulf under Federal Rules of Civil Procedure 24(a) and (b). Cajun took no position on the LPSC's motion, and Gulf requested that the district court order the LPSC to file a memorandum on the jurisdictional effect of the intervention. The district court denied the motion for intervention without ordering the requested memorandum. The LPSC appeals.

## II.

The LPSC contends that it was entitled to intervene in Cajun's action against Gulf as a matter of right under Rule 24(a). Rule 24(a) provides for intervention of right:

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Our initial concern under this Rule is whether Gulf has a cognizable "interest" in the contract between Cajun and Gulf. In *New Orleans Public Service, Inc. v. United Gas Pipe Line Co. (NOPSI III)*, 732 F.2d 452, 464 (5th Cir.) (en banc), *cert. denied*, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984), we affirmed the denial of intervention of right under Rule 24(a) by focusing on the "interest" requirement. We concluded that Rule 24(a) requires a direct, substantial, legally protectable interest in the action, meaning "that the interest be one which the *substantive* law recognizes as belonging to or being owned by the applicant." *Id.* at 464 (emphasis in original).

Like today's case, *NOPSI III* involved a contract dispute between two utilities. The mayor of New Orleans and several city council members moved to intervene in the dispute. The district court denied the motion, but this court originally reversed. *New Orleans Public Service, Inc. v. United Gas Pipe Line Co. (NOPSI I)*, 690 F.2d 1203 (5th Cir.1982). In allowing intervention of right under Rule 24(a), the *NOPSI I* panel reasoned that the city officials had a sufficient interest in the transaction because, under New Orleans' home rule charter, they were responsible for regulating the rates of public utilities within New Orleans. The city officials thus had a statutory obligation to oversee NOPSI, and they would have a future obligation to determine whether NOPSI's recovery, if any, was sufficient to cover the overcharges passed through to consumers.

In an application for rehearing of *NOPSI I*, United brought to the court's attention the fact that New Orleans' residents had recently voted to remove the council members' authority to regulate utility rates, transferring that power to the Louisiana Public Service Commission. In *New Orleans Public Service, Inc. v. United Gas Pipe Line Co. (NOPSI II)*, 694 F.2d 421 (5th Cir.1982), the panel accordingly withdrew the portion of its earlier opinion holding that the city officials were entitled to intervention of right under Rule 24(a).

When the Court returned to Rule 24(a) in *NOPSI III*, it noted that the basis for intervention relied on by the panel in *NOPSI I*—the regulatory power of the City—was no longer at issue:

> Relief is not sought by the City officials (or NOPSI) against United on the basis of the Natural Gas Act or *any asserted power to regulate or approve NOPSI's purchase of or contracts for Power Plant Gas.... Other than the City's now lapsed regulatory role* and the claim of third-party beneficiary rights under the NOPSI–United contract, the *only* "interest" asserted as a basis for intervention is a purely economic interest.

732 F.2d at 465–66.

Another panel of this Court later revisited Rule 24(a) in *Gulf States Utilities Co. v. Alabama Power Co.*, 824 F.2d 1465, 1476 (5th Cir.1987), allowing the LPSC to intervene in a contract dispute between Gulf and Southern Companies, another public utility. *Gulf States* held that the LPSC had a sufficient interest in that transaction because "Louisiana law charges the LPSC to 'investigate the reasonableness and justness of all contracts' made by [Gulf], and the LPSC may disallow ... any unreasonable payments [Gulf] makes to Southern." *Id.* at 1476 (quoting La.Rev.Stat.Ann. § 45:1176 (West 1982)).

The facts of our case are similar to those in *Gulf States,* and we are bound by that decision because a subsequent panel may not overrule a decision by an earlier panel absent a change in the law. *Farrish v. Mississippi State Parole Board*, 836 F.2d 969, 975 (5th Cir.1988). But if we were writing on a clean slate and could simply apply the standards of Rule 24(a) as explained in *NOPSI III*, we would have "serious doubts about whether the requisite legally protectable interest has been shown." *NOPSI I*, 690 F.2d at 1216 (Garwood, J., specially concurring). We question whether the LPSC can show a direct, substantial, legally protectable interest, "which the *substantive* law recognizes as belonging to or being owned by the applicant." *NOPSI III*, 732 F.2d at 464. Nevertheless, *NOPSI III* is not controlling. *Gulf States* properly observed that *NOPSI III* does not address directly whether a regulator may use its statutory powers as a basis for intervention in an action involving one or more of the regulated entities: "*NOPSI III* governs intervention by *non-regulators* and is inapposite to the case before us." 824 F.2d at 1476 n. 14. Because *Gulf States* controls our analysis of the "interest" in this case, we reluctantly conclude that the LPSC has a cognizable interest in this litigation.

▪ Under Rule 24(a), however, a cognizable interest in litigation does not inevitably result in a right to intervention. Before the LPSC may intervene as of right, it must show that its interest will not be adequately represented by the parties. The Supreme Court has stated that this requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972). Although the burden is minimal, "it cannot be treated as so minimal as to write the requirement completely out of the rule." *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir.1984).

In this case, the LPSC argues that its interest in protecting ratepayers is not adequately protected by the parties because the parties will not present information to the district court on the impact of its decision on ratepayers. The LPSC suggests, somewhat obliquely, that the district court would alter its interpretation of the contract between Gulf States and Cajun if it fully understood the consequences of that contract.

We find the LPSC's speculations implausible. First, we see no reason that the parties, who have much more at stake in this litigation than a mere regulatory interest, would not present every conceivable argument favoring their respective positions. Second, and more importantly, the district court is bound to interpret the terms of the contract between Gulf States and Cajun. The LPSC brings no unique arguments to the litigation, and we are

confident that the principles of contract interpretation would yield the same result in this case, regardless of the LPSC's intervention. The district court therefore did not err in denying LPSC's motion to intervene under Rule 24(a).

### III.

The LPSC also argues that it is entitled to permissible intervention under Rule 24(b), which permits intervention "when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." We review the district court's denial of permissive intervention for clear abuse of discretion. *NOPSI III*, 732 F.2d at 471. Under this standard, the Court will reverse a district court decision only under "extraordinary circumstances." *Id.*

We disagree with LPSC's contention that *Gulf States* requires us to reverse the district court's denial of permissible intervention. Permissive intervention depends on the facts of each case. The panel in *Gulf States* did not explain, in any detail, the extraordinary facts that led it to reverse the district court. The *Gulf States* court, however, did not suggest that a regulator *must* be allowed to intervene as a matter of law in every contract action filed or defended by a regulated utility. We have carefully examined the record in this case and find no extraordinary facts that support a conclusion that the district court committed a clear abuse of discretion in denying LPSC's motion to intervene under Rule 24(b).

For the foregoing reasons, we AFFIRM the district court's order denying LPSC's motion to intervene.

AFFIRMED.