SNOHOMISH COUNTY PUBLIC UTILI-
TY DISTRICT NO. 1, a Washington
municipal corporation, Plaintiff,

v.

PACIFICORP, dba Pacific Power & Light
Company, an Oregon corporation;
Portland General Electric Company, an
Oregon corporation; Puget Sound
Power & Light Company, a Washington
corporation; the Washington Water
Power Company, a Washington corpo-
ration; the Montana Power Company,
a Montana Corporation; Bonneville
Power Administration, a federal agen-
cy; Washington Public Power Supply
System, a Washington municipal corpo-
ration, Defendants.

Civ. No. 89–1295–MA.

United States District Court,
D. Oregon.

April 10, 1990.

Daniel Meek, Portland, Or., and Donald
Hale, Everett, Wash., for plaintiff.

Stephen S. Walters, James Fell, and Tra-
cy Pool Reeve, Stoel, Rives, Boley, Jones &

Grey, Portland, Or., for defendants Pacificorp, Portland Gen. Elec. Co., Montana Power Co., Puget Sound Power and Light Co., and the Washington Water Power Co.

Stuart Gerson, Asst. Atty. Gen., Charles H. Turner, U.S. Atty., J. Christopher Kohn, John Showalter, and Keith Sickendick, Attys., Civ. Div., Dept. of Justice, Washington, D.C., for the U.S.

George Kirklin, Richard Williams, Thomas Sondag, Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland, Or., and Daniel Murdock and Andrew Calamari, Donovan, Leisure, Newton & Irvine, New York City, for Defendant Washington Public Power Supply System.

## OPINION

MARSH, District Judge.

Plaintiff, Snohomish PUD, filed this action seeking declaratory relief in a contract dispute between defendants Pacificorp, et al. and the Washington Public Power Supply System ("Supply System"). In addition, plaintiff filed motions to intervene and consolidate the present action with *Pacificorp, et al. v. Washington Public Power Supply System*, Civ. No. 89–1282–MA (filed Nov. 22, 1989). Pacificorp and other investor owned utilities ("IOUs"), the Supply System and the Bonneville Power Administration ("BPA") move to dismiss plaintiff's complaint. On March 5, 1990, a hearing was held on the limited issue of whether plaintiff has standing to sue under the project exchange contract in federal court. Although defendants raised several grounds for dismissal, I indicated to the parties at oral argument that I would decide the threshold issue of standing before allowing the case to proceed any further.

In my original opinion filed March 21, 1990, I found that plaintiff did not have standing to maintain this action and thus, defendants' motions to dismiss were granted and the remaining motions to strike, intervene, and to consolidate were moot. Upon receipt of a letter from counsel for the BPA and the Supply System, my previous opinion is amended solely to correct certain undisputed background information

found on pages three and four of this opinion.

## BACKGROUND

Defendant Supply System, an association of nineteen Washington public utility districts and four Washington cities formed to finance, construct, own and operate electrical generating facilities. It is a municipal corporation and joint operating agency under Washington State law.

Each of the IOUs executed Project Exchange Agreements (PEAs) with the Supply System and the BPA. The PEAs provide for the purchase and assignment of shares of project capability. Pursuant to the PEAs, each IOU agreed to purchase, from the Supply System, 6.494% of the "project capability" of a nuclear power plant at Hanford, Washington, to be known as WPPSS No. 1. Under these agreements, each IOU assigned its share of project capability to the BPA in exchange for electrical power and energy during the period of June 30, 1980 through June 30, 1996.

Each IOU agreed to pay the Supply System for its share of project capability on an annual basis and in accordance with a formula set forth in the agreement. From June 1980, through June 1990, each IOU's payments are based on certain BPA wholesale rate schedules. Beginning on June 30, 1990, and continuing through June 30, 1996, each IOU is obligated to pay a proportionate share of the Supply System's costs related to the acquisition, construction and operation of the Project.

This action arises out of litigation originally filed by the IOUs against the Supply System in Multnomah County Circuit Court for breach of their identical Project Exchange contracts. The IOUs alleged that the Supply System was in breach of the PEAs due to termination of the construction project. The IOUs sought a declaration that they were excused from further performance under the PEAs, in addition to claims for damages. The Supply System removed the action to this court and the IOUs moved to remand the action back to Multnomah County on the basis that this

court lacked subject matter jurisdiction over the contracts. The matter was originally set for oral argument on January 29, 1990, but was struck upon notification of the parties that a settlement agreement was in progress. On February 28, 1990, the parties to that action entered a stipulated order of dismissal which was signed by me on that date.[1]

Snohomish provides electricity to approximately 200,000 customers in the State of Washington and is one of the 105 "preference customers" under the Bonneville Power Act of 1937 and pursuant to a Net Billing Agreement. The Net Billing Agreements, entered into by over 100 municipal utility companies, provide for the distribution of electricity to the project participants through the BPA. In its own Net Billing Agreement with the Supply System and the BPA, Snohomish has agreed to purchase a 19% share of WPPSS Project 1 capability.

After the Supply System removed the Pacificorp action to this court, Snohomish filed this case for declaratory relief based upon the anticipated breach of the PEAs. In addition, plaintiff sought to intervene in the pending action between Pacificorp and the Supply System and consolidate the two matters on the basis that the two cases involved the same contractual dispute.[2] In its complaint, Snohomish seeks a judicial declaration of the rights and responsibilities of the parties to the project exchange agreements, money damages for anticipatory breach by the IOUs on behalf of the Supply System or BPA, and in the alternative, rescission and restitution on behalf of the Supply System or BPA.

## STANDARDS

 Dismissal for failure to state a claim is proper only when it appears to a certainty the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir.1986),

*cert. denied,* 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). For the purpose of the motion to dismiss, the complaint is liberally construed in favor of the plaintiff, and its allegations are taken as true. *Schowengerdt v. General Dynamics Corp.,* 823 F.2d 1328, 1332 (9th Cir.1987).

## DISCUSSION

 In order to establish federal standing, plaintiff must first meet the requirements of Article III of the Constitution by alleging a "present or immediate injury in fact, where the party requesting standing has alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the preservation of issues." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 804, 105 S.Ct. 2965, 2970, 86 L.Ed.2d 628 (1985). Thus, because plaintiff seeks declaratory relief relating to a contract to which it is not a party, it must demonstrate that the alleged injury poses more than a remote or speculative threat to its interests as well as demonstrating a *personal* stake in the outcome. *See id.* at 804, 105 S.Ct. at 2970 (litigant must normally assert his own legal interests rather than those of third parties).

### a. *Injury*

Plaintiff contends that if the IOUs are allowed to breach the terms of the PEAs with the Supply System and BPA, this breach will ultimately result in higher overall operating costs which will necessarily be passed on to Snohomish and the other 104 utility districts who are parties to net billing contracts. Because the parties to the PEAs have entered into a settlement agreement and have entered a stipulated dismissal of their contract dispute, plaintiff's claims of a potential injury due to the prior anticipated breach of contract are moot. In such a situation where the parties to the PEAs are no longer at odds and where the

---

**1.** At the hearing on March 5, 1990, I indicated to counsel for Snohomish that, if I found that Snohomish had standing to sue under the PEAs, I would vacate my order of dismissal given his pending motions to intervene and consolidate.

**2.** Defendants in this action filed memoranda in opposition to plaintiff's motion to intervene and consolidate which raise identical standing issues.

threat of anticipatory breach has been removed, I cannot find that such "concrete adverseness exists" in which I might find either a threatened injury or that an appropriate remedy exists in federal district court to address plaintiff's concerns.

To the extent that plaintiff seeks protection from future increased rates, it has failed to demonstrate that the threat will be the result of a contractual dispute between the IOUs and the Supply Project over PEAs. If plaintiff objects to the rates charged, there exists a comprehensive review process established by Congress in which plaintiff may challenge any rate-making or other agency action. 5 U.S.C. §§ 701–706 (1988); 16 U.S.C. § 839e(f) (1988).

#### b. *Personal Stake*

Even if plaintiff was able to demonstrate some harm or threat of immediate harm in the future, I find that it has also failed to demonstrate a personal stake in the contracts at issue in this litigation.

Plaintiff contends that it has standing as a third party beneficiary to the PEAs. In support of this allegation, plaintiff points to the overall "contractual scheme," and section 10(b) of the PEA which provides:

> *Modification and Uniformity of Agreement.*
>
> (b) This agreement shall not be amended, modified, or otherwise changed by agreement of the parties in any manner that will impair or adversely affect the security afforded by the provisions of this agreement for the payment of the principal, interest, and premium, if any, on the Bonds as they
>
>> respectively become payable so long as any of the Bonds are outstanding and unpaid or funds are not set aside for the payment or retirement thereof in accordance with the Bond resolution.

Thus, plaintiff contends, because the agreement refers to the security of the Bond issue, the utility companies who would necessarily benefit from such security must have been intended third party beneficiaries.

The parties agree that local law applies to the determination of whether or not Snohomish is a third party beneficiary of the PEAs. In Oregon and Washington, courts have held that the existence of a third party beneficiary must appear from the terms of the contract construed as a whole and in light of the circumstances in existence at the time the contract was entered into. *See Aetna Casualty & Surety Co. v. OHSU*, 96 Or.App. 292, 773 P.2d 1320, rev. allowed 308 Or. 465, 781 P.2d 1214 (1989); *Postlewait Construction, Inc. v. Great American Insurance Co.*, 106 Wash.2d 96, 720 P.2d 805 (1986). The parties must intend that the promisor assume a direct obligation to the intended beneficiary. *Postlewait*, 106 Wash.2d 96, 97–98, 720 P.2d 805. In the absence of a direct benefit, the third party beneficiary is merely an "incidental" beneficiary which acquires no rights under the contract. *Id.* Failure to name the third party beneficiary, while not dispositive, is an indication that the promisee did not intend to confer a benefit on that party. *Northwest Airlines v. Crosetti Bros.*, 258 Or. 340, 344–347, 483 P.2d 70 (1971).

Here, the PEAs do not name Snohomish as a beneficiary, nor is there any indication from any of the contract terms or circumstances pleaded that any of the parties intended to give local utility districts rights or direct benefits under the contracts. The fact that Snohomish and other local utilities may receive the benefit of lower rates due to the participation of the IOUs in the PEAs is insufficient to confer third party beneficiary status. I find that Snohomish is, at most, an incidental beneficiary of the PEAs, and as such, it acquires no enforceable rights under the agreements. *See New Orleans Public Service, Inc. v. United Gas Pipeline*, 690 F.2d 1203 (5th Cir. 1983) (court found that rate payers lack standing to file claims under utility contracts).

In addition, plaintiff argues that the IOUs should be estopped from denying third party beneficiary status due to their arguments in *Bonneville Power Administration v. Washington Public Power Supply System*, Case No. C82–1252 (W.D.

Wash.1985). In *BPA*, Judge Bilby found that the IOUs were third party beneficiaries to net billing agreements between the Supply System and the local utilities under WPPSS Project No. 3. Although Judge Bilby made this finding without analysis, it appears to have been based on the fact that the IOUs were 30% owners of Project No. 3. In addition, Judge Bilby's decision was later vacated based upon a stipulated settlement entered into between the parties. Thus, I find that plaintiffs are not estopped from asserting that plaintiff lacks standing based upon Judge Bilby's decision.

Finally, plaintiff contends that this court cannot determine the standing issue based solely on the pleadings. Plaintiff argues that I must allow the case to proceed as material issues of fact remain as to the parties' intent with respect to whether the utility districts are or may be third party beneficiaries.

Although the issue of "intent" often involves disputed material issues of fact, I find that plaintiff has failed to raise any facts upon which I could find that it has standing to sue under the PEAs. On a motion to dismiss I may and should properly determine whether standing exists based upon the *pleaded* terms and *pleaded* circumstances surrounding the contract formation. *Aetna*, 96 Or.App. at 296, 773 P.2d 1320.

## CONCLUSION

Based on the foregoing, I find that plaintiff lacks standing to bring this claim under Article III of the United States Constitution as it has failed to allege an injury or that it has enforceable rights under the challenged contract as a third party beneficiary. Accordingly, defendants' motions to dismiss are GRANTED and all pending motions to intervene, consolidate and strike are DENIED as moot in light of this ruling.