967 F.2d 591
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
SNOHOMISH COUNTY PUBLIC UTILITY DISTRICT NO. 1, Petitioner,
Puget Sound Power & Light Co., Petitioner-Intervenor,
v.
BONNEVILLE POWER ADMINISTRATION, Respondent,
and
Portland General Electric Co., et al., Respondent-Intervenor.
 No. 90-70257.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 6, 1992.
Decided June 15, 1992.
 
 1
 Before PREGERSON and TROTT, Circuit Judges, and DIMMICK,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 This case involves a challenge to a settlement reached between parties involved in the construction of Nuclear Project Number 1 ("WNP-1"). On February 6, 1973, five investor-owned utilities ("IOUs"), the Bonneville Power Association (the "BPA"), and the Washington Public Power Supply System ("WPPSS"), entered into exchange agreements relating to the construction of WNP-1. Each IOU purchased a share of WNP-1 and assigned its share to the BPA in return for a share of the BPA's hydroelectric power at a price determined under the agreement. On the same day, several public utilities, including plaintiff Snohomish County Public Utility District ("Snohomish"), also entered into separate contracts with the WPPSS and BPA to purchase shares of WNP-1's electric capability.
 
 
 4
 WNP-1 has never been completed. On October 27, 1989, the five IOUs filed suit against the BPA and WPPSS claiming commercial frustration and breach of contract. While that suit was pending, Snohomish brought its own suit, seeking a declaratory judgment regarding an interpretation of the terms of the exchange agreement between the IOUs, the BPA, and WPPSS. On February 27, 1990, the IOUs, WPPSS and the BPA settled. The settlement agreement provided that the IOUs would be required to buy BPA power at a price higher than they were presently paying, but not as high as the original contract required. Snohomish's suit was later dismissed. The district court determined that Snohomish did not have standing to challenge the terms of a contract to which it was neither a party nor an intended beneficiary. Snohomish County Pub. Util. Dist. No. 1 v. Pacificorp., 745 F.Supp. 1581 (D.Or.1990). Snohomish did not file a timely appeal. Snohomish now brings an original action in this court challenging the BPA's authority and procedures in reaching its settlement agreement with the IOUs.
 
 
 5
 Snohomish first challenges the BPA's statutory power to enter into a settlement with the IOUs. Section 2(f) of the Bonneville Power Act, 16 U.S.C. § 832a(f) (1988), authorizes the BPA to enter into settlements of contracts. This settlement authority was reserved in the Regional Act. 16 U.S.C. § 839f(a) (1988). This court has recognized that the "unrestrictive language of the statute gives the Administrator [of the BPA] expansive authority to settle contract claims." Utility Reform Project v. Bonneville Power Admin., 869 F.2d 437, 443 (9th Cir.1989).
 
 
 6
 Snohomish also attacks the settlement because the BPA failed to follow the rate-making procedures required when it sells or disposes of energy. 16 U.S.C. § 839e (1988). Exchanges of power are not subject to the rate-making requirements. See Utility Reform Project, 869 F.2d at 446. The original 1973 contract between the BPA and the IOUs was an exchange agreement even though today it seems highly unlikely that WNP-1 will ever come on line. The settlement agreement modifies the original exchange agreement. The fact that the settlement affects the cost payments made by the IOUs does not transform it into a sale of power. Id. at 443-44.
 
 
 7
 Snohomish claims that its due process rights were violated because it was not considered an indispensable party to the settlement. Snohomish, however, is not an indispensable party to begin with. First, as it acknowledges, it is foreclosed from challenging the settlement as a contractual party because that challenge has already been rejected in the district court, and is now res judicata. Snohomish County Pub. Util. Dist. No. 1, 745 F.Supp. at 1584. Any injury or expense it may suffer as a result of the settlement because of its contract with the BPA is not relevant to this appeal. See Utility Reform Project, 869 F.2d at 448.
 
 
 8
 Snohomish is therefore limited to a statutory challenge to the settlement as a public preference customer. The case upon which it relies, City of Santa Clara v. Andrus, 572 F.2d 660 (9th Cir.), cert. denied, 439 U.S. 859 (1978), actually cuts against it. There, the court found that a preference customer did have a property interest in the sale of energy by the BPA to a nonpreference customer because there existed a statutory requirement that the BPA provide energy to a preference customer before offering it to a nonpreference customer. Id. at 676. However, the court also determined that the preference customer did not have a property interest in the sale of energy to other preference customers because the statute did not distinguish between them. Id. Here, Snohomish cannot point to the part of the statute that gives rise to its right to be an indispensable party.
 
 
 9
 The fact that Snohomish feels that it will pay more for the energy it receives from the BPA because the BPA did not settle the exchange agreement as advantageously as Snohomish believes it should have is not relevant. This court has recognized the broad discretion granted to the BPA to settle claims, and that a "settlement will therefore be set aside only for the strongest of reasons." Utility Reform Project, 869 F.2d at 443. Because Snohomish does not have a statutory or contractual basis to support its right to be considered an indispensable party, we find that BPA did not abuse its discretion in reaching a compromise with the IOUs.
 
 
 10
 Finally, Snohomish challenges the settlement on the grounds that the BPA failed to prepare an environmental impact statement pursuant to the National Environmental Policy Act (NEPA). 42 U.S.C. § 4332(2)(C) (1988). However, only those local agencies that are "primarily responsible for environmental quality" have standing to bring suit for a failure to prepare such an impact statement. Port of Astoria v. Hodel, 595 F.2d 467, 475 (9th Cir.1979). This court has previously held, under nearly identical circumstances, that a public utility district does not have standing under NEPA to challenge the BPA's settlement of a dispute with several IOUs over another mothballed nuclear power project, WNP-3. Utility Reform Project, 869 F.2d at 447-48. While Snohomish may have some advisory role in the development of environmental policy, it, like the public utilities in Utility Reform Project, is not primarily responsible for the environment.
 
 
 11
 AFFIRMED.
 
 
 
 *
 The Honorable Carolyn R. Dimmick, United States District Judge for the Western District of Washington, sitting by designation. Although Judge Dimmick did not sit as part of the original panel which heard oral argument, she has reviewed the tape of that argument
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3