JEREMY CHIASSON, Judge Pro Tem.
Town & Country Property, Inc. (Town & Country), a real estate broker, brought suit against JoAnn Soileau, a prospective buyer, to recover its commission following an aborted closing on 52.69[2] acres of land in East Baton Rouge Parish owned by Bozeman Lands, Ltd. The City Court of Baton Rouge ruled in defendant’s favor and dismissed the suit. Town & Country appealed. We affirm the judgment in defendant’s favor, but for reasons that differ from those of the trial judge.
FACTS
Robert Bozeman and Betty B. Behrnes (Bozemans) listed their property with Town & Country during 1993. Ms. Soileau and the Bozemans entered into an “Agreement to Purchase” dated July 6, 1993, using a standard form prepared and provided by Town & Country. Mark R. Haik, president of Town & Country, was the listing salesman and Brenda Garza was the selling salesman. The sales price was $4,000.00 per acre and the “terms of purchase” was stated as “cash at sale.”
It is undisputed that Mrs. Soileau signed the form as an offer, that the Bozemans did not sign until later, and that they were not in her presence when they signed. Mrs. Soi-leau’s signature appears on a signature line marked “Purchaser (Full Name)” and it is preceded by the following: “This offer remains binding and irrevocable until_” The date of July 12, 1993, at 12:00 noon is handwritten in the blank.
It is also undisputed that the blanks in the portion of the form entitled “OWNERS ACCEPTANCE” were filled in after Mrs. Soi-leau signed and were not filled in while she was present. The language of the “OWNERS ACCEPTANCE” is: “1/we accept the above offer and agree to pay the commission of Town & Country Prop Inc amounting to $_” Handwritten in the blank is “6%” and immediately below the blank is the handwritten sum of $12,645.60. This provision is followed by the Bozemans’ signatures which are dated 7/6/93.
The language in the Agreement to Purchase that forms the basis of the plaintiff’s claim against the defendant is: “In the event either party fails to comply with the terms of this agreement within the time specified, then the failing party shall be obligated to pay ^broker’s fees, attorney fees and all other fees and costs incurred in enforcing collection and damages.”
. Mrs. Soileau admitted at trial that she intended to procure the funds to purchase the property by selling portions of the land, allowing her to retain a portion of the property for herself and her husband. She admitted she was unable to raise the purchase price by the established deadline.
By letter dated December 9, 1993, Mr. Haik informed Mrs. Soileau of the.following:
This will serve to formally notify you that on Thursday, November 18, 1993, the sellers of the ... property attended an aborted closing due to your absence.
In accordance with the contract, the law and proper procedures, you are hereby held in default and liable to all parties due to your lack of performance.
* * 5k * * *
Be assured the sellers will seek full restitution allowable by law for the damages and inconvenience inflicted upon them by your nonperformance.
Additionally, Town & Country hereby makes formal demand for the commission and any legal fees which may be incurred to enforce collection thereof.
Mr. Haik testified that he procured an attorney to write a demand letter to Mrs. Soileau. By letter dated April 13, 1994, counsel for Town & Country, Thomas E. Gibbs, informed Mrs. Soileau of the following:
I represent Town and Country Properties, Inc. who is currently holding the $1,500.00 deposit made by you incidental to the *1005 Agreement to Purchase.... Town and Country desires to disburse the deposit money but cannot do so without the agreement of the parties or Order of the Court. I have talked with Mr. Bozeman, the general partner of Bozeman Lands, Ltd., and he has indicated that the position of all of his partners is to recover the $1,500.00 deposit and pursue appropriate damages for your failure to attend the closing fixed in these proceedings. The damages are based upon the fact that your execution of the Agreement to Purchase on July 6,1993 effectively took the land off the commercial market for several months and was a breach of your contract with the partnership. Despite the financial hardships you are currently experiencing, neither Town and Country nor Bozeman Lands, Ltd. will release the $1,500.00 to you.
On a form prepared and provided by Town & Country and dated May 9, 1994, and executed June 1, 1994, the persons involved entered into the following agreement:
I/we hereby authorize the release and return of the escrow funds (earnest money/deposit) being held for me, in conjunction with the contract to purchase the property known as 53.69 acres on Hooper Rd. by Bozeman’s. I/we understand that these funds will be released to the seller and that the reason for the return is the inability of the above referenced contract to be executed as a result of the following: Purchaser’s inability to produce funds at closing. Sellers agree to hold purchaser harmless for any “specific performance” and accepts the escrow in the amount of $1500 as full liquidation for damages.
j4The release is signed by Mrs. Soileau as purchaser, the Bozemans as seller, and Mr. Haik as broker.
After trial on the merits, the court rendered judgment in defendant’s favor, with oral reasons that state, in pertinent part:
[T]he parties ... met and executed a release agreement_ Now, the real estate broker is seeking to establish ... its right to recover the amount of Twelve Thousand Six Hundred Forty-five Dollars and Sixty cents. Based upon the evidence presented, the Court determines that the broker’s fees, even though ... unspecified in terms of a percentage or an amount, are consistent with industry practice, [and have] been earned.... The purchase agreement clearly indicates that in event of default by either party, the responsible party would be responsible for broker’s fees, attorney’s fees, and all other fees incurred in collection damages. Now, the secondary argument or issue relating to why this defendant should not pay this money relates to the release instrument, which is somewhat peculiar to this Court because the broker signs as a witness to this release.... What was he doing at the meeting? What was he participating in? Was he intending to be within the scope of the release or not? The defendant testified that she thought when she left, that was the end of it. In other words, there wasn’t going to be this lawsuit for some Twelve Thousand Dollars. Otherwise, she may have done a little bit more.... To give up Fifteen Hundred and then turn around and give them another Twelve Thousand Dollars without — there’s no attorney involved or no one advising her; I don’t know if she knows what she’s doing at that point or not_ This Court decides that because the brokers participated in the release and because the brokers failed at that point to reserve in the contract, or release, any claim or any reservation, and that the [defendant] was allowed to leave the meeting with her understanding that this was the conclusion of the matter, I resolve this dispute in favor of ... the defendant....
On appeal, Town & Country assigns the following error: “The Trial Court erred in interpreting the release of escrow authorization to also release the purchaser from her obligation for the broker’s fee where the release of escrow authorization does not address the broker’s fee.”
In her brief Mrs. Soileau asserts the following: “The purchase agreement was not a proper ‘stipulation for a third party’ and accordingly, appellant derived no benefit from the contract.”
Because we agree with appellee’s analysis of the purchase agreement and conclude that it is a bar to recovery of the broker’s fee, we *1006 pretermit discussion of Town & Country’s argument.
STIPULATION POUR AUTRUI
A realtor is entitled to a commission when he is a third party beneficiary to a valid agreement to purchase between a seller and a buyer. See Creely v. Leisure Living, Inc., 437 So.2d 816, 819 (La.1983). However, in Creely, the realtor was not entitled to its |5commission; the purchase agreement expired by its own terms when the buyer did not obtain financing, and the buyer was not in default.
In the instant case, we find there were two facts which vitiated Mrs. Soileau’s consent and prevented the confection of a legally binding agreement to pay the broker’s fee.
First, both Mr. Haik and Ms. Garza testified that they explained the Agreement to Purchase to Mrs. Soileau at her insistence. Thus, the plaintiffs own witnesses proved that Mrs. Soileau was relying on the broker for vital information concerning the contract she was entering into. However, Mr. Haik admitted that he did not discuss financing with Mrs. Soileau after she responded to his initial inquiry by saying that it was none of his business. Although the two realtors may have explained the agreement “line by line,” nowhere in the record is there testimony that they explained to Mrs. Soileau that the effect of placing “cash on sale” would result in default on her part if she failed to get financing. From Mrs. Soileau’s testimony and the testimony of the other witnesses, we infer that she was quite cautious about the commitments she was making, such as arranging to pay the escrow in three $500.00 payments. It is inconceivable to us that Mrs. Soileau would have rejected the protection of having the agreement to purchase be contingent upon her attaining financing. Thus, we conclude that the broker’s failure to inform Mrs. Soileau about the effect of her placing “cash on sale” in the contract vitiates her consent to the agreement to purchase. Accordingly, we cannot conclude that Mrs. Soileau was in default of the Agreement to Purchase.
Second, Mrs. Soileau’s consent to that contract provision that the defaulting party would pay the broker’s fee was vitiated by the lack of a specification in the contract of the percentage or dollar amount of the broker’s fee, a provision that was added only after she signed and which she never saw. Thus, the trial court erred when it concluded that the lack of an amount was immaterial. Uncertainty in the contract is a defense that can be asserted by the promisor (purchaser) against the beneficiary (broker) just as any other defenses arising from the contract which are available to him as against the promisee (seller). See Miller v. Crusel, 135 La. 649, 65 So. 873 (1914), in which the original stipulation in favor of the party claiming the broker’s commission was void for want of certainty as to the benefit to be conferred on him, specifically the percentage of the commission; the stipulation pour au-trui remained inchoate.
16We conclude that the trial court erred in finding Mrs. Soileau was in default of a valid agreement to purchase and thus obligated to the broker pursuant to a valid stipulation pour autrui. However, because the result remains the same — judgment in Mrs. Soi-leau’s favor — it is immaterial that Mrs. Soi-leau did not appeal or answer the appeal.
Accordingly, we affirm the judgment of the trial court and we cast appellant for costs of this appeal.
AFFIRMED.
FITZSIMMONS, J., concurs in the result.

. The purchase agreements provides 52.69 acres, but the release provides 53.69 acres. Because this case does not involve a sale, the difference is immaterial.